FILED
CLERK, U.S. DISTRICT COURT

3/21/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ VAM _____ DEPUTY

1  TRACY L. WILKISON
   United States Attorney
2  SCOTT M. GARRINGER
   Assistant United States Attorney
3  Chief, Criminal Division
   ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
4  Assistant United States Attorney
   Deputy Chief, Major Frauds Section
5       1100 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-1259
7       Facsimile: (213) 894-0141
        E-mail:    alexander.schwab@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10                 UNITED STATES DISTRICT COURT

11             FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,           No. CR  2:22-cr-00101-SVW

13            Plaintiff,                PLEA AGREEMENT FOR DEFENDANT
                                        TING HONG YEUNG
14            v.

15  TING HONG YEUNG,

16            Defendant.

17

18      1.   This constitutes the plea agreement between TING HONG YEUNG

19  ("defendant") and the United States Attorney's Office for the Central

20  District of California (the "USAO") in this investigation into

21  defendant's fraudulent use of Amazon seller accounts from 2013 to

22  2020.  This agreement is limited to the USAO and cannot bind any

23  other federal, state, local, or foreign prosecuting, enforcement,

24  administrative, or regulatory authority.

25                     DEFENDANT'S OBLIGATIONS

26      2.   Defendant agrees to:

27           a.   Give up the right to indictment by a grand jury and,

28  at the earliest opportunity requested by the USAO and provided by the

Court, appear and plead guilty to the sole count of the information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with wire fraud, in violation of 18 U.S.C. § 1343.

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement.

d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g. Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h. Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i. Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all

1  of the documents requested therein, to the USAO by either email at
2  usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial
3  Litigation Section at 300 North Los Angeles Street, Suite 7516, Los
4  Angeles, CA 90012.  Defendant agrees that defendant's ability to pay
5  criminal debt shall be assessed based on the completed Financial
6  Disclosure Statement and all required supporting documents, as well
7  as other relevant information relating to ability to pay.

8         j.   Authorize the USAO to obtain a credit report upon
9  returning a signed copy of this plea agreement.

10        k.   Consent to the USAO inspecting and copying all of
11 defendant's financial documents and financial information held by the
12 United States Probation and Pretrial Services Office.

13        l.   Allow funds previously seized in connection with this
14 matter on February 10, 2022, in the amount of approximately $36,922,
15 as well as gold- and silver-colored bars seized on that same date,
16 unless subject to forfeiture, to be applied by the Court to pay, in
17 order of application, any restitution, special assessment, criminal
18 fines, and costs that defendant is required to pay, and execute
19 papers as necessary to accomplish this application.

20                        THE USAO'S OBLIGATIONS
21    3.   The USAO agrees to:
22        a.   Not contest facts agreed to in this agreement.
23        b.   Abide by all agreements regarding sentencing contained
24 in this agreement.
25        c.   At the time of sentencing, provided that defendant
26 demonstrates an acceptance of responsibility for the offense up to
27 and including the time of sentencing, recommend a two-level reduction
28 in the applicable Sentencing Guidelines offense level, pursuant to

1  USSG § 3E1.1, and recommend and, if necessary, move for an additional
2  one-level reduction if available under that section.
3       d.   Recommend that defendant be sentenced to a term of
4  imprisonment no higher than the low end of the applicable Sentencing
5  Guidelines range, provided that the offense level used by the Court
6  to determine that range is 18 or higher.  For purposes of this
7  agreement, the low end of the Sentencing Guidelines range is that
8  defined by the Sentencing Table in USSG Chapter 5, Part A, without
9  regard to reductions in the term of imprisonment that may be
10 permissible through the substitution of community confinement or home
11 detention as a result of the offense level falling within Zone B or
12 Zone C of the Sentencing Table.
13                    NATURE OF THE OFFENSE
14      4.   Defendant understands that for defendant to be guilty of
15 the crime charged in the sole count of the information, that is, wire
16 fraud, in violation of 18 U.S.C. § 1343, the following must be true:
17 (1) defendant knowingly participated in a scheme or plan to defraud,
18 or a scheme or plan for obtaining money or property by means of false
19 or fraudulent pretenses, representations, or promises.  Deceitful
20 statements or half-truths may constitute false or fraudulent
21 representations; (2) the statements made as part of the scheme were
22 material, that is, they had a natural tendency to influence, or were
23 capable of influencing, a person to part with money or property;
24 (3) defendant acted with the intent to defraud, that is, the intent
25 to deceive and cheat; and (4) defendant used, or caused to be used,
26 an interstate wire communication to carry out an essential part of
27 the scheme.
28

4

PENALTIES AND RESTITUTION

5.   Defendant understands that the statutory maximum sentence that the Court can impose for wire fraud, in violation of 18 U.S.C. § 1343, is: twenty years' imprisonment; a three-year period of supervised release; a fine of $100 or twice the gross gain or gross loss resulting from the offense, whichever is greater; and a mandatory special assessment of $100.

6.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result of any relevant conduct, as defined in USSG § 1B1.3, in connection with the offense to which defendant is pleading guilty. The parties currently believe that the loss resulting to the victim(s) of defendant's offense amounts to approximately $1,302,954 but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing. Defendant intends to argue that the restitution he is required to pay is lower than $1,302,954 based on offsets but understands that the Court may reject that argument.

7.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that

1  if defendant violates one or more of the conditions of any supervised
2  release imposed, defendant may be returned to prison for all or part
3  of the term of supervised release authorized by statute for the
4  offense that resulted in the term of supervised release, which could
5  result in defendant serving a total term of imprisonment greater than
6  the statutory maximum stated above.

7      8.   Defendant understands that, by pleading guilty, defendant
8  may be giving up valuable government benefits and valuable civic
9  rights, such as the right to vote, the right to possess a firearm,
10 the right to hold office, and the right to serve on a jury. Defendant
11 understands that he is pleading guilty to a felony and that it is a
12 federal crime for a convicted felon to possess a firearm or
13 ammunition.  Defendant understands that the conviction in this case
14 may also subject defendant to various other collateral consequences,
15 including but not limited to revocation of probation, parole, or
16 supervised release in another case and suspension or revocation of a
17 professional license.  Defendant understands that unanticipated
18 collateral consequences will not serve as grounds to withdraw
19 defendant's guilty plea.

20     9.   Defendant and his counsel have discussed the fact that, and
21 defendant understands that, if defendant is not a United States
22 citizen, the conviction in this case makes it practically inevitable
23 and a virtual certainty that defendant will be removed or deported
24 from the United States.  Defendant may also be denied United States
25 citizenship and admission to the United States in the future.
26 Defendant understands that while there may be arguments that
27 defendant can raise in immigration proceedings to avoid or delay
28 removal, removal is presumptively mandatory and a virtual certainty

6

1  in this case.  Defendant further understands that removal and

2  immigration consequences are the subject of a separate proceeding and

3  that no one, including his attorney or the Court, can predict to an

4  absolute certainty the effect of his conviction on his immigration

5  status.  Defendant nevertheless affirms that he wants to plead guilty

6  regardless of any immigration consequences that his plea may entail,

7  even if the consequence is automatic removal from the United States.

8                               FACTUAL BASIS

9      10.  Defendant admits that defendant is, in fact, guilty of the

10  offense to which defendant is agreeing to plead guilty.  Defendant

11  and the USAO agree to the statement of facts provided below and agree

12  that this statement of facts is sufficient to support a plea of

13  guilty to the charge described in this agreement and to establish the

14  Sentencing Guidelines factors set forth in paragraph 12 below but is

15  not meant to be a complete recitation of all facts relevant to the

16  underlying criminal conduct or all facts known to either party that

17  relate to that conduct.

18      Beginning no later than 2013, and continuing through at least

19  April 30, 2020, in Los Angeles County, within the Central District of

20  California, and elsewhere, defendant, knowingly and with the intent

21  to defraud, devised, participated in, and executed a scheme to

22  defraud Amazon.com, Inc. ("Amazon"), as to material matters, and to

23  obtain money and property from Amazon by means of material false and

24  fraudulent pretenses, representations, and promises.

25      At times relevant to the charge in the information:

26      Both Amazon and third-party sellers used Amazon's online

27  platform to make retail sales to Amazon customers.  Third-party

28  sellers who wished to use Amazon's platform were required to register

1  for an Amazon seller account, which required a bank account number
2  and bank routing number; chargeable credit card; government-issued
3  identification; tax information; and a phone number.  Third-party
4  sellers approved for Amazon seller accounts were provided access to
5  an online portal called Seller Central, through which third-party
6  sellers could manage inventory, communicate with customers, contact
7  Amazon, and update payment information.

8       When a customer purchased an item from a third-party seller,
9  Amazon credited the associated Amazon seller account for that
10 purchase.  Third-party sellers were responsible for providing Amazon
11 with the tracking number for each shipment corresponding to an
12 individual sale.  Roughly every fourteen days, Amazon disbursed funds
13 from the Amazon seller account into the associated bank account for
14 that third-party seller for sales with a corresponding tracking
15 number.  When a customer sought to return an item purchased from a
16 third-party seller, the seller was generally responsible for
17 providing return options and paying a refund from the seller's Amazon
18 account.  If the third-party seller did not provide a refund (or
19 could not, due to a lack of funds in the seller's Amazon account),
20 customers could seek a refund directly from Amazon.  Amazon deducted
21 the cost of the refund from the seller's Amazon account, when it held
22 sufficient funds to do so, prior to a disbursement of those funds to
23 the seller.

24      Over the course of the scheme, defendant used various Amazon
25 seller accounts he either registered or controlled, and which were in
26 the names of various business entities he controlled, including
27 "Special SaleS," "California Red Trading, Inc.," "Speedy Checkout,
28 Inc.," "Expeditious Enterprise, Inc.," and "LV Consultants, Inc."

1  The Amazon seller accounts for these businesses, in turn, linked to
2  bank accounts for which he was an authorized signer or over which he
3  otherwise exerted control.

4      The scheme generally operated as follows: after some period of
5  normal activity, defendant began listing high-priced items, such as
6  furniture or home décor, on one of his Amazon seller accounts at
7  prices far below those offered by competitors.  This generally caused
8  a spike in sales.  As Amazon customers placed orders, defendant
9  falsely confirmed order shipments with tracking information that did
10  not, in fact, correspond to an actual shipment.  Instead of
11  satisfying the orders, defendant instead employed various delay
12  tactics, including false responses to customer inquiries that orders
13  were on their way or by shipping low-value crystal ornaments, which
14  created the further appearance to Amazon that merchandise had, in
15  fact, been shipped and induced customers to delay complaints or
16  requests for refunds.  Defendant would carry on these delay tactics
17  long enough to cause Amazon to disburse the funds in his Amazon
18  seller account into the associated bank account he controlled,
19  leaving Amazon responsible for reimbursing customers who did not
20  receive their orders for any amounts in excess of the balance of
21  funds remaining in that Amazon seller account.

22      In furtherance of the scheme, on February 18, 2020, for example,
23  defendant communicated with a customer using Amazon's Buyer-Seller
24  Messaging Service, which provided wire communications between buyers
25  and sellers using encrypted email addresses routed through Amazon.
26  The customer sent a message as follows:

27          Hello,  I've received a crystal ornament and a note saying
        that my couch will arrive, March 6th-18th.  Please advise
28          why the product I ordered has been labeled as "Delivered"

1    when I have yet to receive the item that I have purchased.
     This feels like a scam.  Thank you
2
3  In response, and in order to delay any complaint being lodged by the

4  customer, defendant wrote,

5    HI  How we are scam? Your order ship day is Mon, Mar 2,
     2020 to Fri, Mar 6, 2020 .Deliver by: Fri, Mar 6, 2020 to
6    Wed, Mar 18, 2020 . May I know do you want full refund ?

7  These communications took place by means of interstate wire

8  transmission.

9        As part of the scheme, defendant also submitted fraudulent

10 refund claims to Amazon.  Using credit cards in the names of other

11 persons and fictitious names, defendant caused products to be

12 purchased from Amazon in order to fulfill orders made through one of

13 his seller accounts.  After the correct product was delivered to the

14 customer, defendant caused a refund request to be submitted to

15 Amazon, often selecting as the reason that the product was "Different

16 from what was ordered."  Instead of returning the originally ordered

17 product, defendant caused the return of a substitute product of lower

18 value, such as damaged goods, receiving the benefit of the refund as

19 well as the proceeds of the sale of the originally ordered product to

20 the customer.

21       As a result of defendant's scheme, Amazon was forced to

22 reimburse customers approximately $1,142,360 in excess of the funds

23 available in defendant's Amazon seller accounts, and Amazon paid out

24 approximately $160,594 on fraudulent refund claims submitted or

25 orchestrated by defendant.  In total, defendant's scheme therefore

26 caused approximately $1,302,954 in losses to Amazon.

27

28

SENTENCING FACTORS

11. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [USSG § 2B1.1(a)(1)] |
| Loss > $550k | +14 | [USSG § 2B1.1(b)(1)(H)] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

13. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

WAIVER OF CONSTITUTIONAL RIGHTS

15.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.   Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTION

16.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to

1 appeal defendant's conviction on the offense to which defendant is

2 pleading guilty.  Defendant understands that this waiver includes,

3 but is not limited to, arguments that the statute to which defendant

4 is pleading guilty is unconstitutional, and any and all claims that

5 the statement of facts provided herein is insufficient to support

6 defendant's plea of guilty.

7                LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

8      17.  Defendant agrees that, provided the Court imposes a total

9 term of imprisonment on all counts of conviction of no more than 33

10 months, defendant gives up the right to appeal all of the following:

11 (a) the procedures and calculations used to determine and impose any

12 portion of the sentence; (b) the term of imprisonment imposed by the

13 Court; (c) the fine imposed by the Court, provided it is within the

14 statutory maximum; (d) to the extent permitted by law, the

15 constitutionality or legality of defendant's sentence, provided it is

16 within the statutory maximum; (e) the amount and terms of any

17 restitution order, provided it requires payment of no more than $1.4

18 million; (f) the term of probation or supervised release imposed by

19 the Court, provided it is within the statutory maximum; and (g) any

20 of the following conditions of probation or supervised release

21 imposed by the Court: the conditions set forth in Second Amended

22 General Order 20-04 of this Court; the drug testing conditions

23 mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and

24 drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

25     18.  The USAO agrees that, provided (a) all portions of the

26 sentence are at or below the statutory maximum specified above and

27 (b) the Court imposes a term of imprisonment of no less than 27

28 months, the USAO gives up its right to appeal any portion of the

1  sentence, with the exception that the USAO reserves the right to
2  appeal the following: the amount of restitution ordered if that
3  amount is less than $1,302,954.

4                    RESULT OF WITHDRAWAL OF GUILTY PLEA

5      19.  Defendant agrees that if, after entering a guilty plea
6  pursuant to this agreement, defendant seeks to withdraw and succeeds
7  in withdrawing defendant's guilty plea on any basis other than a
8  claim and finding that entry into this plea agreement was
9  involuntary, then the USAO will be relieved of all of its obligations
10  under this agreement.

11                    EFFECTIVE DATE OF AGREEMENT

12     20.  This agreement is effective upon signature and execution of
13  all required certifications by defendant, defendant's counsel, and an
14  Assistant United States Attorney.

15                    BREACH OF AGREEMENT

16     21.  Defendant agrees that if defendant, at any time after the
17  effective date of this agreement, knowingly violates or fails to
18  perform any of defendant's obligations under this agreement ("a
19  breach"), the USAO may declare this agreement breached.  All of
20  defendant's obligations are material, a single breach of this
21  agreement is sufficient for the USAO to declare a breach, and
22  defendant shall not be deemed to have cured a breach without the
23  express agreement of the USAO in writing.  If the USAO declares this
24  agreement breached, and the Court finds such a breach to have
25  occurred, then: (a) if defendant has previously entered a guilty plea
26  pursuant to this agreement, defendant will not be able to withdraw
27  the guilty plea, and (b) the USAO will be relieved of all its
28  obligations under this agreement.

                                    14

1      COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

2                        OFFICE NOT PARTIES

3      22.  Defendant understands that the Court and the United States

4 Probation and Pretrial Services Office are not parties to this

5 agreement and need not accept any of the USAO's sentencing

6 recommendations or the parties' agreements to facts or sentencing

7 factors.

8      23.  Defendant understands that both defendant and the USAO are

9 free to: (a) supplement the facts by supplying relevant information

10 to the United States Probation and Pretrial Services Office and the

11 Court, (b) correct any and all factual misstatements relating to the

12 Court's Sentencing Guidelines calculations and determination of

13 sentence, and (c) argue on appeal and collateral review that the

14 Court's Sentencing Guidelines calculations and the sentence it

15 chooses to impose are not error, although each party agrees to

16 maintain its view that the calculations in paragraph 12 are

17 consistent with the facts of this case.  While this paragraph permits

18 both the USAO and defendant to submit full and complete factual

19 information to the United States Probation and Pretrial Services

20 Office and the Court, even if that factual information may be viewed

21 as inconsistent with the facts agreed to in this agreement, this

22 paragraph does not affect defendant's and the USAO's obligations not

23 to contest the facts agreed to in this agreement.

24      24.  Defendant understands that even if the Court ignores any

25 sentencing recommendation, finds facts or reaches conclusions

26 different from those agreed to, and/or imposes any sentence up to the

27 maximum established by statute, defendant cannot, for that reason,

28 withdraw defendant's guilty plea, and defendant will remain bound to

1  fulfill all defendant's obligations under this agreement.  Defendant
2  understands that no one -- not the prosecutor, defendant's attorney,
3  or the Court -- can make a binding prediction or promise regarding
4  the sentence defendant will receive, except that it will be within
5  the statutory maximum.

6              NO ADDITIONAL AGREEMENTS

7      25.  Defendant understands that, except as set forth herein,
8  there are no promises, understandings, or agreements between the USAO
9  and defendant or defendant's attorney, and that no additional
10  promise, understanding, or agreement may be entered into unless in a
11  writing signed by all parties or on the record in court.

12        PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

13      26.  The parties agree that this agreement will be considered
14  //
15  //

1  part of the record of defendant's guilty plea hearing as if the

2  entire agreement had been read into the record of the proceeding.

3  AGREED AND ACCEPTED

4  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
5  CALIFORNIA

6  TRACY L. WILKISON
   United States Attorney
7

8  _____          March 21, 2022
   ALEXANDER B. SCHWAB                        _____
9  Assistant United States Attorney          Date

10
   _____          03-16-2022
11 TING HONG YEUNG                           _____
   Defendant                                 Date
12

13 _____          3/16/22
   VICTOR SHERMAN                            _____
14 Attorney for Defendant                    Date
   TING HONG YEUNG
15

16                    CERTIFICATION OF DEFENDANT

17      I have read this agreement in its entirety.  I have had enough

18 time to review and consider this agreement, and I have carefully and

19 thoroughly discussed every part of it with my attorney.  I understand

20 the terms of this agreement, and I voluntarily agree to those terms.

21 I have discussed the evidence with my attorney, and my attorney has

22 advised me of my rights, of possible pretrial motions that might be

23 filed, of possible defenses that might be asserted either prior to or

24 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

25 of relevant Sentencing Guidelines provisions, and of the consequences

26 of entering into this agreement.  No promises, inducements, or

27 representations of any kind have been made to me other than those

28 contained in this agreement.  No one has threatened or forced me in

                                    17

1  any way to enter into this agreement.  I am satisfied with the

2  representation of my attorney in this matter, and I am pleading

3  guilty because I am guilty of the charge and wish to take advantage

4  of the promises set forth in this agreement, and not for any other

5  reason.

6
_____           03-16-2022
7  TING HONG YEUNG                             Date
   Defendant
8

9                  CERTIFICATION OF DEFENDANT'S ATTORNEY

10     I am TING HONG YEUNG's attorney.  I have carefully and

11  thoroughly discussed every part of this agreement with my client.

12  Further, I have fully advised my client of his rights, of possible

13  pretrial motions that might be filed, of possible defenses that might

14  be asserted either prior to or at trial, of the sentencing factors

15  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

16  provisions, and of the consequences of entering into this agreement.

17  To my knowledge: no promises, inducements, or representations of any

18  kind have been made to my client other than those contained in this

19  agreement; no one has threatened or forced my client in any way to

20  enter into this agreement; my client's decision to enter into this

21  agreement is informed and voluntary; and the factual basis set forth

22  in this agreement is sufficient to support my client's entry of a

23  guilty plea pursuant to this agreement.

24
_____           4/16/22
25  VICTOR SHERMAN                              Date
    Attorney for Defendant
26  TING HONG YEUNG

27

28

                                  18

1

2

3                                    **EXHIBIT A**

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No.

11              Plaintiff,              I N F O R M A T I O N

12              v.                      [18 U.S.C. § 1343: Wire Fraud; 18
                                        U.S.C. § 981(a)(1)(C); 28 U.S.C.
13   TING HONG YEUNG,                   § 2461(c): Criminal Forfeiture]

14              Defendant.

15

16        The United States Attorney charges:

17                          [18 U.S.C. § 1343]

18   A.   INTRODUCTORY ALLEGATIONS

19        At times relevant to this Information:

20        1.   Defendant TING HONG YEUNG was a resident of Los Angeles

21   County, California.

22        2.   Amazon.com, Inc. ("Amazon"), was a technology company

23   headquartered in Seattle, Washington.  Amazon provided, among other

24   services, an online platform that facilitated retail sales of goods

25   to Amazon customers, either by Amazon itself or by third-party

26   sellers.

27        3.   In order to use Amazon's online platform, a third-party

28   seller was required to set up an online Amazon seller account.  In

creating an Amazon seller account, the third-party seller was required to provide a bank account number and bank routing number for an associated bank account (the "Associated Account"); credit card account information; government-issued identification; tax information; and a phone number.  Approved third-party sellers could access an online portal called Seller Central, through which the third-party sellers could manage inventory, communicate with customers, contact Amazon, and update payment information.

4.   When a customer purchased an item listed on Amazon by a third-party seller, Amazon credited the third party's Amazon seller account for the amount of that purchase.  Third-party sellers were responsible for providing Amazon with the tracking number for each shipment corresponding to an individual sale.  Roughly every fourteen days, Amazon disbursed funds from sales with a corresponding tracking number from the third party's Amazon seller account to the Associated Account.

5.   When a customer sought to return an item purchased from a third-party seller, the third-party seller was generally responsible for providing return options.  If the third-party seller did not provide a refund (or could not, due to a lack of funds in the seller's Amazon account), customers could seek a refund directly from Amazon under Amazon's "A-to-z Guarantee."  When the Amazon seller's account held sufficient available funds, Amazon deducted the cost of the refund from that account prior to the next disbursement of funds to the Associated Account.

6.   Defendant YEUNG registered or otherwise controlled Amazon seller accounts in the names of "Special SaleS," "California Red Trading, Inc.," "Speedy Checkout, Inc.," "Expeditious Enterprise,

2

1  Inc.," "LV Consultants, Inc.," and "Frolax, Inc." (collectively, the
2  "YEUNG Seller Accounts").  The Associated Accounts for the YEUNG
3  Seller Accounts were all in defendant YEUNG's name or under his
4  control.

5      7.   Amazon customers and third-party sellers could communicate
6  through Amazon's Buyer-Seller Messaging Service, which provided wire
7  communications between buyers and sellers using encrypted email
8  addresses routed through Amazon.

9  B.   SCHEME TO DEFRAUD

10      8.   Beginning no later than 2013, and continuing through at
11  least April 30, 2020, in Los Angeles County, within the Central
12  District of California, and elsewhere, defendant YEUNG, knowingly and
13  with the intent to defraud, devised, participated in, and executed a
14  scheme to defraud Amazon as to material matters, and to obtain money
15  and property from Amazon by means of material false and fraudulent
16  pretenses, representations, and promises.

17      9.   The scheme to defraud operated, in substance, as follows:

18          a.   After one of the YEUNG Seller Accounts had been active
19  for some period of time, thereby gaining the appearance of being a
20  reputable vendor, defendant YEUNG caused it to list expensive items,
21  frequently furniture and home décor, at prices significantly lower
22  than the prices listed for comparable items by other sellers.  As
23  defendant YEUNG knew and intended, these discounted prices attracted
24  Amazon customers, driving a rapid increase in sales.

25          b.   After an Amazon customer placed an order for one of
26  the offered items, defendant YEUNG would not ship the item ordered
27  and paid for to the customer.  Instead, defendant YEUNG falsely
28  confirmed that the item had been shipped to the customer by providing

3

false shipment tracking information to the customer and to Amazon
that did not correspond to an actual shipment of the purchased item.

c.    When Amazon customers used Amazon's Buyer-Seller
Messaging Service to inquire about their missing orders, defendant
YEUNG sent lulling responses to the messages to convince customers to
continue waiting for their products instead of complaining to Amazon
or seeking refunds.  By forestalling complaints or demands for
refunds, defendant YEUNG ensured that Amazon would disburse customer
funds into the Associated Accounts controlled by defendant YEUNG.

d.    In some instances, instead of shipping customers the
products they ordered, defendant YEUNG would cause cheap crystal
ornaments to be shipped to the customers, which both generated
tracking numbers that induced Amazon to disburse funds to the
Associated Accounts and lulled customers into refraining from filing
complaints or demanding refunds.

e.    In another part of the scheme, defendant YEUNG used
credit cards in the names of other persons and fictitious names to
purchase products from Amazon that he would use to fulfill orders
placed through one of his seller accounts.  After the product was
delivered to defendant YEUNG's customer, defendant YEUNG caused a
refund request to be submitted to Amazon, often selecting as the
reason that the product was "Different from what was ordered," which
was false.  Instead of returning the originally ordered product
(which had been sent to defendant YEUNG's customer), defendant YEUNG
caused a substitute product of lower value, such as damaged goods, to
be "returned."  As a result, defendant YEUNG received both the
benefit of the refund as well as the sale proceeds from the original
transaction with his customer.

4

10.  As a result of the scheme to defraud, defendant YEUNG caused losses to Amazon of approximately $1,302,954.

C.   USE OF INTERSTATE WIRES

11.  On or about February 18, 2020, within the Central District of California, and elsewhere, for the purpose of executing the scheme to defraud described above, defendant YEUNG transmitted and caused the transmission of a wire communication by means of interstate commerce, namely, an Amazon Buyer-Seller Messaging Service communication to a customer stating, "HI  How we are scam? . . . . May I know do you want full refund ?."

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)]

12.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of defendant TING HONG YEUNG's conviction of the offense set forth in the sole count of this Information.

13.   Defendant YEUNG, if so convicted, shall forfeit to the United States of America the following:

a.   All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

b.   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

14.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant YEUNG, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of defendant YEUNG, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

6

1   substantially diminished in value; or (e) has been commingled with

2   other property that cannot be divided without difficulty.

3

4                                          TRACY L. WILKISON
                                           United States Attorney
5
                                            /S
6

7                                          SCOTT M. GARRINGER
                                           Assistant United States Attorney
8                                          Chief, Criminal Division

9                                          RANEE A. KATZENSTEIN
                                           Assistant United States Attorney
10                                         Chief, Major Frauds Section

11                                         ALEXANDER B. SCHWAB
                                           Assistant United States Attorney
12                                         Deputy Chief, Major Frauds Section

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28