STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-1259
     Facsimile: (213) 894-0141
     E-mail:   alexander.schwab@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 22-101-SVW |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT TING HONG YEUNG; EXHIBIT |
| v. | |
| TING HONG YEUNG, | Hearing Date: August 29, 2022 |
| Defendant. | Hearing Time: 11:00 a.m. Location:    Courtroom of the Hon. Stephen V. Wilson |

        Plaintiff United States of America, by and through its counsel

of record, the Acting United States Attorney for the Central District

of California and Assistant United States Attorney Alexander B.

Schwab, hereby files its sentencing position for defendant Ting Hong

Yeung.

        This sentencing position is based upon the attached memorandum

of points and authorities, Exhibit A to the sentencing position

(filed under seal), the presentence investigation report

//

//

("PSR"), the files and records in this case, and such further

evidence and argument as the Court may permit.

Dated: August 15, 2022         Respectfully submitted,

                               STEPHANIE S. CHRISTENSEN
                               Acting United States Attorney

                               SCOTT M. GARRINGER
                               Assistant United States Attorney
                               Chief, Criminal Division


                               _____/s/_____
                               ALEXANDER B. SCHWAB
                               Assistant United States Attorney

                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

Over the better part of a decade, defendant Ting Hong Yeung

4
swindled Amazon out of more than $1.3 million by gaming its third-

5
party seller platform.  He now faces sentencing for wire fraud.

6
Defendant's crime was both immensely profitable and the product

7
of significant effort; it therefore requires a sentence sufficient to

8
reflect the seriousness of his crime and deter others from following

9
a similar path.  At the same time, defendant was unusually swift in

10
accepting responsibility for his crime and agreeing to make

11
restitution.  The government therefore agrees with the Probation

12
Office that a 27-month sentence, which falls at the low end of

13
defendant's guideline range, is sufficient but not greater than

14
necessary to achieve the goals of sentencing set forth in 18 U.S.C.

15
§ 3553(a).

16

## II.   STATEMENT OF FACTS

17

As part of his factual basis to his plea agreement and change of

18
plea, defendant admitted to the following facts:

19
        Beginning no later than 2013, and continuing through
20
    at least April 30, 2020, in Los Angeles County, within the
    Central District of California, and elsewhere, defendant,
21
    knowingly and with the intent to defraud, devised,
    participated in, and executed a scheme to defraud
22
    Amazon.com, Inc. ("Amazon"), as to material matters, and to
    obtain money and property from Amazon by means of material
23
    false and fraudulent pretenses, representations, and
    promises.

24
        At times relevant to the charge in the information:

25
        Both Amazon and third-party sellers used Amazon's
26
    online platform to make retail sales to Amazon customers.
    Third-party sellers who wished to use Amazon's platform
27
    were required to register for an Amazon seller account,
    which required a bank account number and bank routing
    number; chargeable credit card; government-issued
28
    identification; tax information; and a phone number.

Third-party sellers approved for Amazon seller accounts were provided access to an online portal called Seller Central, through which third-party sellers could manage inventory, communicate with customers, contact Amazon, and update payment information.

When a customer purchased an item from a third-party seller, Amazon credited the associated Amazon seller account for that purchase. Third-party sellers were responsible for providing Amazon with the tracking number for each shipment corresponding to an individual sale. Roughly every fourteen days, Amazon disbursed funds from the Amazon seller account into the associated bank account for that third-party seller for sales with a corresponding tracking number. When a customer sought to return an item purchased from a third-party seller, the seller was generally responsible for providing return options and paying a refund from the seller's Amazon account. If the third-party seller did not provide a refund (or could not, due to a lack of funds in the seller's Amazon account), customers could seek a refund directly from Amazon. Amazon deducted the cost of the refund from the seller's Amazon account, when it held sufficient funds to do so, prior to a disbursement of those funds to the seller.

Over the course of the scheme, defendant used various Amazon seller accounts he either registered or controlled, and which were in the names of various business entities he controlled, including "Special SaleS," "California Red Trading, Inc.," "Speedy Checkout, Inc.," "Expeditious Enterprise, Inc.," and "LV Consultants, Inc." The Amazon seller accounts for these businesses, in turn, linked to bank accounts for which he was an authorized signer or over which he otherwise exerted control.

The scheme generally operated as follows: after some period of normal activity, defendant began listing high-priced items, such as furniture or home décor, on one of his Amazon seller accounts at prices far below those offered by competitors. This generally caused a spike in sales. As Amazon customers placed orders, defendant falsely confirmed order shipments with tracking information that did not, in fact, correspond to an actual shipment. Instead of satisfying the orders, defendant instead employed various delay tactics, including false responses to customer inquiries that orders were on their way or by shipping low-value crystal ornaments, which created the further appearance to Amazon that merchandise had, in fact, been shipped and induced customers to delay complaints or requests for refunds. Defendant would carry on these delay tactics long enough to cause Amazon to disburse the funds in his Amazon seller account into the associated bank account he controlled, leaving Amazon responsible for reimbursing customers who did not receive their orders for

any amounts in excess of the balance of funds remaining in that Amazon seller account.

In furtherance of the scheme, on February 18, 2020, for example, defendant communicated with a customer using Amazon's Buyer-Seller Messaging Service, which provided wire communications between buyers and sellers using encrypted email addresses routed through Amazon.  The customer sent a message as follows:

Hello, I've received a crystal ornament and a note saying that my couch will arrive, March 6th-18th. Please advise why the product I ordered has been labeled as "Delivered" when I have yet to receive the item that I have purchased. This feels like a scam. Thank you

In response, and in order to delay any complaint being lodged by the customer, defendant wrote,

HI  How we are scam? Your order ship day is Mon, Mar 2, 2020 to Fri, Mar 6, 2020 .Deliver by: Fri, Mar 6, 2020 to Wed, Mar 18, 2020 . May I know do you want full refund ?

These communications took place by means of interstate wire transmission.

As part of the scheme, defendant also submitted fraudulent refund claims to Amazon.  Using credit cards in the names of other persons and fictitious names, defendant caused products to be purchased from Amazon in order to fulfill orders made through one of his seller accounts. After the correct product was delivered to the customer, defendant caused a refund request to be submitted to Amazon, often selecting as the reason that the product was "Different from what was ordered."  Instead of returning the originally ordered product, defendant caused the return of a substitute product of lower value, such as damaged goods, receiving the benefit of the refund as well as the proceeds of the sale of the originally ordered product to the customer.

As a result of defendant's scheme, Amazon was forced to reimburse customers approximately $1,142,360 in excess of the funds available in defendant's Amazon seller accounts, and Amazon paid out approximately $160,594 on fraudulent refund claims submitted or orchestrated by defendant.  In total, defendant's scheme therefore caused approximately $1,302,954 in losses to Amazon.

(Plea Agreement ¶ 10, at 7-10).

3

## III. SENTENCING GUIDELINES

The government agrees with the PSR's calculation of defendant's sentencing guidelines, which is also consistent with the plea agreement:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [USSG § 2B1.1(a)(1)] |
| Loss > $550k | +14 | [USSG § 2B1.1(b)(1)(H)] |
| Acceptance of Responsibility | -3 | [USSG § 3E1.1] |
| **TOTAL** | **18** | |

Coupled with defendant's lack of prior criminal history, the result is a guideline range of **27 to 33 months' imprisonment.** The government joins the Probation Office's recommendation of 27 months, which falls at the low end of this range.

## IV. ARGUMENT

### A. The Seriousness of the Offense and Need for General Deterrence

While all the § 3553(a) factors support a guideline sentence of imprisonment in this case, the seriousness of defendant's offense and the need for general deterrence are particularly salient here.

First, though defendant has no prior criminal history, his crime was not a lapse in judgment or an aberration from an otherwise law-abiding life. He perpetrated his fraud over the course of roughly seven years, collecting more than $1.3 million. He forced his victim into an elaborate game of Whac-A-Mole: when Amazon uncovered and shut down a fraud scheme involving one of defendant's companies, he simply began it anew with another. But for defendant's eventual encounter with law enforcement, there is no reason to believe he would not have continued with his scam indefinitely.

1    While Amazon ultimately suffered the direct financial losses

2  from defendant's scheme, others were harmed as well.  As explained in

3  Exhibit A, in addition to the monetary losses defendant caused Amazon

4  and the costs associated with investigating the fraud, defendant's

5  harmed other third-party sellers using Amazon's platform.  (Exh. A,

6  at 2).  These third-party sellers were deprived of opportunities to

7  sell to the customers that defendant swindled.  And just as

8  importantly, the ability of small businesses to operate as third-

9  party vendors on Amazon's platform depends on people's trust in the

10  system's soundness; the more that scams like this one disrupt

11  services to customers, the less willing they will be to make online

12  purchases from third parties using Amazon's platform.

13    The calculated nature of the offense and the seven-figure

14  profits defendant reaped also demonstrate the need for the sentence

15  to provide general deterrence.  As the operator of small businesses

16  with an online presence, defendant is exactly the type of individual

17  most likely to make decisions based on a cost-benefit analysis, and

18  the sentence must be sufficient to discourage similarly situated

19  individuals from following a similar course of conduct.  As the case

20  law acknowledges, "[d]efendants in white collar crimes often

21  calculate the financial gain and risk of loss, and white collar crime

22  therefore can be affected and reduced with serious punishment."

23  United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006).  In

24  this case, the Sentencing Guidelines generally provide an appropriate

25  measure of such a sentence, since the financial losses that

26  defendant's crime inflicted correspond to the profits defendant

27  realized from his scheme.

28

**B.    Mitigating Considerations**

Notwithstanding the scale and scope of defendant's fraud, two factors stand in mitigation, though both are already accounted for by the Sentencing Guidelines.

First, defendant has no prior criminal history.  This fact is, however, already reflected in defendant's Category I criminal history.  In fact, defendant's criminal history score may in some ways understate the degree of his criminal intent, since he carried out his fraud scheme from 2013 to 2020.

Second, defendant's acceptance of responsibility in this case was unusually swift; investigators executed a search warrant on defendant's home on February 10 (PSR ¶ 21, at 6), and defendant signed his plea agreement on March 16 (CR 3).  Defendant is already receiving a three-level reduction in his offense level under USSG § 3E1.1 for acceptance of responsibility, and the Sentencing Guidelines prescribe that additional departures for early acceptance of responsibility are prohibited.  USSG § 5K2.0(d)(2).  Defendant's prompt resolution of his case does, however, demonstrate a bona fide acknowledgment of wrongdoing and a willingness to make amends, which suggests a sentence at the low end of defendant's guideline range is sufficient to achieve the goals of sentencing in this case.

**V.    RESTITUTION**

As part of the factual basis to defendant's plea agreement, he agreed to causing actual losses to Amazon of $1,302,954.  The Mandatory Victims Restitution Act requires imposition of a restitution order for this amount, see 18 U.S.C. § 3663A, and defendant agreed as part of his plea agreement to make restitution.

**VI.  CONCLUSION**

For the foregoing reasons, the government joins the Probation Office in recommending that this Court impose a sentence of 27 months' imprisonment followed by two years of supervised release, restitution of $1,302,954, and a $100 special assessment.

# EXHIBIT A

# (Filed Separately Under Seal)